UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAVID TROUPE,

           Plaintiff,

    v.

EDWARD WOODS, et al.,

           Defendants.

CASE NO. 3:16-CV-05077-RBL-DWC

REPORT AND RECOMMENDATION

Noting Date: March 3, 2017

The District Court referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Presently pending before the Court is Defendants Abraha, Broumley, Burt, Comstock, Cook, Cummings, Fernelius, Glebe, Griffith, Herzog, Johnson, MacWilliam, Reinersten, Roberts, Smith, Thompson, Ward, Wirt, Woods, and Wulf's Motion for Summary Judgment ("Motion").[1] Dkt. 54; 61.

---

[1] Defendant Roy Reinersten had not been served in this action when the Motion was filed. *See* Dkt. 49, 50, 60. However, Defendants state the legal arguments made in the Motion demonstrate the claims against Defendant Reinersten should be dismissed for failure to exhaust. *See* Dkt. 54, n. 1. Further, Defendant Reinersten filed a Notice of Joinder, joining the Motion. Dkt. 61. Therefore, when referencing "Defendants" in this Report and Recommendation, the Court is referring to all Defendants in this action.

REPORT AND RECOMMENDATION - 1

The Court concludes Plaintiff failed to administratively exhaust all but one of his claims. The Court also concludes Plaintiff failed to sufficiently rebut Defendants' summary judgment showing as to Plaintiff's one remaining claim. Accordingly, the Court recommends the Motion be granted. The Court further recommends this case count as a strike under 28 U.S.C. §1915(g) based on Plaintiff's conduct in this action and his history of abusing the litigation process.

**BACKGROUND**

Plaintiff David Troupe, an inmate housed at the Washington Corrections Center ("WCC") at all relevant times, alleges Defendants violated his constitutional rights by acting with deliberate indifference to his mental health needs. *See* Dkt. 33. Specifically, Plaintiff alleges the following ten claims: (1) Plaintiff was ignored when he declared a mental health emergency on November 25, 2015; (2) Defendant Ward looked into Plaintiff's cell, said "looks like he's still alive," and smiled on November 26, 2015; (3) Defendants ignored Plaintiff when he pushed his emergency call button on December 2, 2015; (4) Plaintiff told Defendant Thompson he needed help and was denied treatment, then Defendants Fernelious and Johnson attempted to cover up Defendant Thompson's actions on December 26, 2015; (5) Plaintiff reported to several staff members he was having thoughts of self-harm, but did not receive adequate treatment on December 29, 2015; (6) Defendant Cook asked Plaintiff if he was manipulating when Plaintiff requested to talk to mental health on January 29, 2016; (7) Defendant Cook taunted Plaintiff and denied him toilet paper on February 4, 2016; (8) Defendant Reinersten harassed Plaintiff and provoked prison officials to use force against Plaintiff on March 11, 2016; (9) Defendant Abraha refused to call Plaintiff "out for a med[ical] review" from November 2015 to March 2016; and (10) Plaintiff's Individual Behavior Management Plan ("IBMP") and Security Enhancement Plan ("SEP") violated his constitutional rights. Dkt. 33.

1  Defendants filed the Motion on June 21, 2016. Dkt. 54. In support of the Motion,

2  Defendants submitted the declarations of Tim Thrasher, Dale Caldwell, and Edward Woods,

3  portions of Plaintiff's prison records, and documents and orders from Plaintiff's previous court

4  cases. *See* Dkt. 27-29. Plaintiff filed a Response to the Motion on December 29, 2016[2] and

5  Plaintiff's First Amended Complaint was signed under penalty of perjury and is being considered

6  as evidence. *See* Dkt. 33.[3] Defendants filed their Reply on January 26, 2017. Dkt. 94.[4]

## STANDARD OF REVIEW

8  Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant

9  summary judgment if the movant shows that there is no genuine dispute as to any material fact

10 and the movant is entitled to judgment as a matter of law." A party asserting a fact cannot be or

11 is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

16 Fed. R. Civ. P. 56(c)(1). All facts and reasonable inferences drawn therefrom must be viewed in

17 the light most favorable to the nonmoving party. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th

---

[2] Defendants request the Court strike select statements contained in Plaintiff's Response, titled "Declaration of David Troupe Re: Sum. Judgment." Dkt. 94. Defendants request the statements be stricken because they are conclusory and self-serving and have no factual details. *Id*. As Plaintiff is proceeding *pro se*, the Court declines to strike portions of Plaintiff's Response. However, the Court notes conclusory statements are not sufficient to overcome a summary judgment showing. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990) (the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit").

[3] Because Plaintiff is *pro se*, the Court "must consider as evidence in his opposition to summary judgment all of [Plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [Plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

[4] Plaintiff was granted several extensions of time to file a response to the Motion. *See* Dkt. 64, 77, 83. The Motion became ready for the Court's consideration on January 27, 2017. *See* Dkt. 83.

Cir. 2013) (*citing Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011); *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir.1997).

As the party moving for summary judgment, Defendants have the initial burden to demonstrate no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010). The movant "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying those portions of the record, including pleadings, discovery materials, and affidavits, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Mere disagreement or the bald assertion stating a genuine issue of material fact exists does not preclude summary judgment. *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some 'significant probative evidence tending to support the complaint.'" *Id.* (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 290 (1986); *see also California Architectural Building Products, Inc.*, 818 F.2d at 1468 ("No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment."). In other words, the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). "If a party fails to properly support an assertion of fact or fails to properly address

another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials--including the facts considered undisputed-- show that the movant is entitled to it[.]" Fed R. Civ. P. 56(e)(3).

## DISCUSSION

In the Motion, Defendants assert Plaintiff failed to: (1) exhaust administrative remedies as to Claims 1 - 9; and (2) show viable constitutional violations related to his remaining IBMP and SEP claim (Claim 10). Dkt. 54. Defendants also request the Court determine this action is a strike under 28 U.S.C. § 1915(g). *Id*.

**I.   Exhaustion of Administrative Remedies**

Defendants allege Plaintiff failed to exhaust Claims 1 – 9 (as outlined in the Background Section). Dkt. 54, p. 19.[5] The Court agrees.

A.   <u>Legal Standard</u>

Before a prisoner may bring a civil rights action under 42 U.S.C. § 1983, he must first exhaust all available administrative remedies. Under the Prison Litigation Reform Act of 1995 ("PLRA"),

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion in cases covered by § 1997e(a) is mandatory. *Booth v. Churner*, 532 U.S. 731, 739 (2001). The mere fact a plaintiff has filed an initial grievance under a prison's grievance policy does not satisfy the PLRA exhaustion requirement; a plaintiff must exhaust *all* levels of an available grievance procedure before he can initiate litigation. *See id.* at

---

[5] Defendants do not raise an exhaustion issue with Plaintiff's failure to grieve his IBMP because the IBMP cannot be grieved. *See* Dkt. 51, p. 19, n. 11.

1  736-41; *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). Even when the prisoner seeks relief not

2  available in grievance proceedings, notably money damages, exhaustion is still a prerequisite to

3  suit. *Id.* at 741.  If a claim is not exhausted, it must be dismissed. *McKinney v. Carey*, 311 F.3d

4  1198, 1199 (9th Cir. 2002).

5       Failure to exhaust administrative remedies is properly brought as a summary judgment

6  motion. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014). Once the defendant proves there

7  was an available administrative remedy and the offender failed to exhaust the available remedy,

8  the burden shifts to the plaintiff.  The plaintiff must show there was something about his

9  particular claim which made the "existing and generally available administrative remedies

10 effectively unavailable to him." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (*citing*

11 *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996)).

12     B.  <u>Application</u>

13      Defendants' evidence shows prisoners in the custody of the Washington State

14 Department of Corrections ("DOC") may file administrative grievances pertaining to several

15 routine matters, including conditions of confinement, conduct of staff, or retaliatory conduct.

16 Dkt. 28, Caldwell Dec, ¶ 5; Dkt. 28-1, p.16. Prisoners may also file emergency grievances when

17 there is a potentially serious threat to the life or health of an inmate or staff member, or involve a

18 potential threat to the orderly operation of a facility. Dkt. 28-1, p. 14. Under DOC policy, the

19 grievance procedure consists of four levels of review. Dkt. 28, Caldwell Dec., ¶ 8. Both routine

20 and emergency grievances are initially filed at Level 0. *Id*. At Level 0, the facility's "grievance

21 coordinator pursues informal resolution, returns the complaint to the offender for rewriting,

22 returns the complaint to the offender requesting additional information, or accepts the complaint

23 and processes it as a formal grievance." *Id*. After satisfactory review of the informal grievance at

24

Level 0, the grievance coordinator accepts routine and emergency grievances as formal grievances at Level I and complaints alleging staff misconduct at Level II. *Id*.

If the grievance is proceeds beyond Level 0, the grievance coordinator issues a formal response at Level I. *Id*.; Dkt. 28-1, p. 25. A prisoner may appeal the denial of either a routine or emergency grievance to the superintendent of the facility at Level II. Dkt. 28, Caldwell Dec., ¶ 8; Dkt. 28-1, p. 25. This is the final level of review for emergency grievances. Dkt. 28, Caldwell Dec., ¶ 8; Dkt. 28-1, p. 25. "Inmates may appeal all Level II responses except emergency grievances to Department headquarters . . . , where they are re-investigated" at Level III. Dkt. 28, Caldwell Dec., ¶ 8. Level III is the final level of review. *See id*.

Here, Plaintiff did not exhaust any grievances related to incidents alleged in Claims 1 – 9. *See* Dkt. 28, Caldwell Dec., ¶¶ 10, 12 (since October 2015, Plaintiff exhausted two grievances, neither of which related to Claims 1 – 9);[6] *see also* Dkt. 88. Plaintiff did file one grievance related to Claim 4 (staff ignoring claims that he was going to self-harm on December 26, 2015). Dkt. 28, Caldwell Dec., ¶ 12. However, this grievance was administratively withdrawn prior to the final grievance level. *See id*.[7]

Based on the evidence, the Court finds Defendants have carried the initial burden of showing the absence of exhaustion as to Claims 1 – 9. The undisputed evidence presented by Defendants shows there was a grievance procedure in place at the time of the incidents complained of in the First Amended Complaint. Plaintiff was aware of the grievance process and

---

[6] Plaintiff exhausted two grievances during the relevant time period. The first exhausted grievance complained of the appropriate use of four-point restraints instead of six-point restraints and the second exhausted grievance dealt with legal property. *See* Dkt. 28, Caldwell Dec., ¶ 11. The exhausted grievances are unrelated to Claims 1-9 of the First Amended Complaint. *See* Dkt. 33 (First Amended Complaint).

[7] Plaintiff submitted grievances in excess of the maximum allowed at one time under facility policy and thus Plaintiff was required to choose which grievances to continue. Dkt. 28, Caldwell Dec., ¶12. After Plaintiff made his election, the Claim 4 grievance was administratively withdrawn. *Id*.

participated in the grievance process while housed at WCC. Plaintiff, however, did not complete the grievance process for Claims 1 – 9.

The burden now shifts to Plaintiff, "who must show that there is something particular in his case that made the existing and generally available remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (*quoting Albino*, 747 F.3d at 1172). Acts by prison officials preventing the exhaustion of administrative remedies may make administrative remedies effectively unavailable. *See Nunez v. Duncan*, 591 F.2d 1217, 1224-25 (9th Cir. 2010). "The ultimate burden of proof, however, remains with the defendants," and the evidence must be viewed in the light most favorable to the plaintiff. *Paramo*, 775 F.3d at 1191 (*citing Albino*, 747 F.3d at 1172). The Supreme Court recently held there are three circumstances in which an administrative remedy is not capable of potential relief:

> First, an administrative procedure is unavailable when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use—i.e., some mechanism exists to provide relief, but no ordinary prisoner can navigate it. And finally, a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation.

*Ross v. Blake,* 136 S. Ct. 1850, 1853–1854 (2016).

Plaintiff alleges he complained about every issue in his First Amended Complaint, though not necessarily through the grievance process. Dkt. 87. "[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Sapp v. Kimbrell*, 623 F.3d 813, 821 (9th Cir. 2010); *Harvey v. Jordan*, 605 F.3d 681, 683-84 (9th Cir. 2010). Therefore, "a prisoner must complete the administrative review process in

1 accordance with the applicable procedural rules, including deadlines, as a precondition to
2 bringing suit in federal court[.]" *Woodford*, 548 U.S. at 88. Plaintiff's conclusory statement that
3 he complained of every claim through verbal complaints, letters, or kites is not sufficient to show
4 proper exhaustion. *See* Dkt. 87. He was required to use the DOC grievance process to properly
5 exhaust his claims. His attempt to exhaust through methods other than the approved grievance
6 process fails to satisfy exhaustion or show the grievance process was unavailable. *See Panaro v.*
7 *City of North Las Vegas*, 432 F.3d 949, 953 (9th Cir. 2005) (finding participation in an internal
8 affairs investigation did not satisfy exhaustion).

9 Plaintiff also states he attempted to file emergency grievances, but there was no appeal.
10 Dkt. 87. First, Plaintiff's statement is conclusory. *See id*. He fails to state which claims he was
11 unable to exhaust because there was no appeal. *Id*. at p. 2. Second, prisoners are able to appeal
12 emergency grievances through Level II. *See* Dkt. 28, Cadwell Dec., ¶ 8; 28-1, p. 14. Thus,
13 Plaintiff's contention is refuted by the evidence. Third, the evidence shows Plaintiff failed to
14 exhaust any grievance related to the incidents alleged in Claims 1 – 9. *See* Dkt. 28, Caldwell
15 Dec., 28-1, 88.[8] Therefore, Plaintiff's alleged inability to appeal emergency grievances is not
16 sufficient to show the grievance process was unavailable or he was incapable of effectively using
17 it.

18 As Plaintiff did not fully follow the proper grievance procedures available at WCC, he
19 has not overcome Defendants' showing that he failed to exhaust administrative remedies
20 available to him. Therefore, the Court concludes Claims 1-9 were not properly exhausted and

---

[8] Additionally, Plaintiff states a grievance was destroyed in front of him, but does not allege the grievance was related to Claims 1 – 9. *See* Dkt. 87. Plaintiff also disagrees with the DOC policy which limits him to five active grievances. *See id*. He does not allege this made exhaustion unavailable, but rather disagrees with the policy implications of being limited to five active grievances. He also does not allege he attempted to grieve Claim 4 after it was administratively withdrawn, but was unable to. Thus, the Court does not find these two additional reasons overcome Defendants' summary judgment showing.

REPORT AND RECOMMENDATION - 9

should be dismissed without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) *overruled on other grounds by Albino,* 747 F.3d at 1162. Accordingly, the Court recommends the Motion be granted as to Claims 1-9.

**II.     IBMP and SEP Claim**

Defendants argue Plaintiff's sole remaining claim – his IBMP and SEP violate his constitutional rights (Claim 10) – should be dismissed because the claim is unsupported and legally meritless. Dkt. 54. First, Plaintiff alleges his rights were violated because the IBMP and SEP prohibited him from receiving medical care during mental health emergencies. *See* Dkt. 33, pp. 6-7. Second, Plaintiff asserts the IBMP violates his rights because it subjects Plaintiff to strip searches and six-point restraints. *Id*. at pp. 12-13.  The Court concludes Claim 10 should be dismissed.

A.  Evidence

The evidence shows Plaintiff was issued an IBMP on November 9, 2015 and it was revised on January 7, 2016. Dkt. 29, Woods Dec., ¶ 5. An IBMP is a plan "intended to address [an] offender's behaviors and manage how staff should address certain behaviors with the intent of changing the offender's behavior." *Id*. at ¶ 4. Plaintiff's "IBMP does not encourage staff to ignore [Plaintiff] or prevent [Plaintiff] from receiving mental health treatment." *Id.* Under the IBMP, if Plaintiff is verbalizing an emergency, such as self-harm, his is moved to a holding cell and given fifteen minutes to de-escalate. *See* Dkt. 29-1, p. 21; 29, Woods Dec., ¶ 5. If Plaintiff is unable to de-escalate and still voicing threats of self-harm, he is strip searched and given another fifteen minute cool-down period. Dkt. 29-1, p. 21; 29, Woods Dec., ¶ 5. Plaintiff is strip searched "to ensure he does not have contraband or anything with which he might harm himself" and "is designed to ensure [Plaintiff's] and staff's safety." Dkt. 29, Woods Dec., ¶ 6. After the second

should be dismissed without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) *overruled on other grounds by Albino,* 747 F.3d at 1162. Accordingly, the Court recommends the Motion be granted as to Claims 1-9.

**II.     IBMP and SEP Claim**

Defendants argue Plaintiff's sole remaining claim – his IBMP and SEP violate his constitutional rights (Claim 10) – should be dismissed because the claim is unsupported and legally meritless. Dkt. 54. First, Plaintiff alleges his rights were violated because the IBMP and SEP prohibited him from receiving medical care during mental health emergencies. *See* Dkt. 33, pp. 6-7. Second, Plaintiff asserts the IBMP violates his rights because it subjects Plaintiff to strip searches and six-point restraints. *Id*. at pp. 12-13.  The Court concludes Claim 10 should be dismissed.

A.  <u>Evidence</u>

The evidence shows Plaintiff was issued an IBMP on November 9, 2015 and it was revised on January 7, 2016. Dkt. 29, Woods Dec., ¶ 5. An IBMP is a plan "intended to address [an] offender's behaviors and manage how staff should address certain behaviors with the intent of changing the offender's behavior." *Id*. at ¶ 4. Plaintiff's "IBMP does not encourage staff to ignore [Plaintiff] or prevent [Plaintiff] from receiving mental health treatment." *Id.* Under the IBMP, if Plaintiff is verbalizing an emergency, such as self-harm, his is moved to a holding cell and given fifteen minutes to de-escalate. *See* Dkt. 29-1, p. 21; 29, Woods Dec., ¶ 5. If Plaintiff is unable to de-escalate and still voicing threats of self-harm, he is strip searched and given another fifteen minute cool-down period. Dkt. 29-1, p. 21; 29, Woods Dec., ¶ 5. Plaintiff is strip searched "to ensure he does not have contraband or anything with which he might harm himself" and "is designed to ensure [Plaintiff's] and staff's safety." Dkt. 29, Woods Dec., ¶ 6. After the second

1   cool-down period, Plaintiff is placed on the restraint bed and medical personnel is notified. *Id*. at

2   ¶ 5; Dkt. 29-1, p. 21. Prior to returning Plaintiff to his cell, the mental health officer on duty is

3   contacted. Dkt. 29-1, p. 21.

4   In addition to the IBMP, Plaintiff was issued an SEP while housed at WCC in late 2015

5   and early 2016 because of his disruptive behavior. Dkt. 29, Woods Dec., ¶ 7. An SEP is a plan

6   for "offenders who need additional security measures or precautions to ensure the safety of

7   staff." *Id*. Plaintiff's SEP "required staff to video and audio record all of [Plaintiff's] activities

8   and interactions." *Id*. The SEP, however, did not apply to routine tier check conduct where the

9   contact was "simply obtaining a yes or no; checking on [Plaintiff's] well[-]being; issuing him

10  food trays or items from the supply cart; or retrieving items." *Id*.; *see also* Dkt. 29-1, p. 32.

11        B.   Conditions of Confinement

12  First, Plaintiff essentially argues the conditions of his confinement, imposed through the

13  IBMP and SEP, violated his constitutional rights. Dkt. 33. The Constitution does not mandate

14  comfortable prisons, but neither does it permit inhumane prisons. *Farmer v. Brennan*, 511 U.S.

15  825, 832 (1970). Under the Eighth Amendment, prison officials are required to provide prisoners

16  with basic life necessities, such as food, clothing, shelter, sanitation, medical care, and personal

17  safety. *Id.*; *Toussaint v. McCarthy*, 801 F.3d 1080, 1107 (9th Cir. 1986). To state a claim for

18  unconstitutional conditions of confinement, an inmate must allege a defendant's acts or omissions

19  deprived the inmate of "the minimal civilized measure of life's necessities" and the defendant

20  acted with deliberate indifference to an excessive risk to inmate health or safety. *Allen v. Sakai,* 48

21  F.3d 1082, 1087 (9th Cir. 1994) (quoting *Farmer,* 511 U.S. at 834); *see Estate of Ford v.*

22  *Ramirez—Palmer,* 301 F.3d 1043, 1049–50 (9th Cir. 2002).

23

24

REPORT AND RECOMMENDATION - 11

1    Here, Plaintiff alleges the IBMP and SEP violated his constitutional rights because: (1)
2 the SEP prohibited Plaintiff from receiving emergency mental health care; and (2) the IBMP
3 prohibited the mental health officer on duty from evaluating and treating Plaintiff when he
4 threatened to self-harm. Dkt. 33, pp. 6-7. The evidence shows the IBMP and SEP create specific
5 guidelines for prison officials to follow when interacting with Plaintiff. There is no evidence
6 showing prison officials are allowed to deny Plaintiff medical treatment because of the IBMP or
7 SEP. Rather, the IBMP has specific procedures for prison officials to follow when Plaintiff is
8 voicing a mental health emergency. *See* Dkt. 29-1, p. 32. The SEP also has specific procedures
9 for prison officials to follow when interacting with Plaintiff, but it does not prohibit Plaintiff
10 from receiving medical treatment. Therefore, Plaintiff's allegation that the IBMP and SEP
11 prohibit him from receiving mental health treatment is unsupported by the evidence.

12    C.  Excessive Force

13    Plaintiff also alleges his constitutional rights were violated under his IBMP because he
14 was subjected to strip searches and six-point restraints without a mental health evaluation. Dkt.
15 33, pp. 12-13. "When prison officials use excessive force against prisoners, they violate the
16 inmates' Eighth Amendment right to be free from cruel and unusual punishment." *Clement v.*
17 *Gomez*, 298 F.3d 898, 903 (9th Cir. 2002). However, "[f]orce does not amount to a constitutional
18 violation in this respect if it is applied in a good faith effort to restore discipline and order and
19 not 'maliciously and sadistically for the very purpose of causing harm.'" *Id.* (*quoting Whitley v.*
20 *Albers,* 475 U.S. 312, 320–321 (1986)); *see also Wilkins v. Gaddy,* 559 U.S. 34, 40 (2010) (to
21 prevail on an excessive force claim, a plaintiff must allege "not only that the assault actually
22 occurred but also that it was carried out maliciously and sadistically rather than as part of a good-
23 faith effort to maintain or restore discipline"). The Court must consider the following relevant
24

1 factors to determine whether the use of force was wanton and unnecessary: "the extent of injury
2 suffered [,] ... the need for application of force, the relationship between that need and the
3 amount of force used, the threat [to the safety of staff and inmates] 'reasonably perceived by the
4 responsible officials,' and 'any efforts to temper the severity of a forceful response.'" *Hudson v.*
5 *McMillian,* 503 U.S. 1, 7 (1992) (*quoting Whitley,* 475 U.S. at 322).

6       Here, Plaintiff provided only conclusory allegations asserting his rights were violated
7 when he was subjected to strip searches and six-point restraints. Dkt. 33, pp. 12-13. He fails to
8 allege facts showing how either the strip searches or six-point restraints violated his
9 constitutional rights. *Id*. Plaintiff also does not allege the IBMP was created to cause him harm or
10 allege Defendants employed strip searches or six-point restraints maliciously or sadistically for
11 the purpose of causing harm. *Id*. Rather, the evidence shows Plaintiff was provided with a cool-
12 down period when he threatened self-harm. *See* Dkt. 29, Woods Dec., ¶ 5. If Plaintiff was unable
13 to de-escalate, he was strip searched and given a second cool-down period. *Id*. If Plaintiff still
14 was threatening self-harm, he was placed on a restraint bed. *Id*. This was all done in an effort to
15 ensure Plaintiff's safety without unnecessarily placing him on a restraint bed. *Id*. Plaintiff failed
16 to allege facts sufficient to show his constitutional rights were violated when he was strip
17 searched and placed in six-point restraints. *See Jeffers v. Gomez*, 267 F.3d 895, 910-11 (9th Cir.
18 2001) (finding a prison security measure undertaken for the protection of prison officials and
19 inmates is constitutional when it is applied in good-faith and not used maliciously); *Thompson v.*
20 *Souza*, 111 F.3d 694, 701 (9th Cir. 1997) (finding a strip search not done maliciously or
21 sadistically for the purpose of causing harm was not a violation of clearly established law).

22
23
24

D. Conclusion

For the above stated reasons, the Court finds Plaintiff has failed to overcome Defendants' summary judgment showing that Plaintiff's constitutional rights were not violated through the implementation of the IBMP and SEP. Accordingly, the Court recommends the Motion be granted as to Plaintiff's IBMP and SEP claim (Claim 10).

### III.    Strike under PLRA

Defendants request this action be deemed frivolous and malicious and be counted as a strike under the PLRA. Dkt. 54. "[P]risoners who have repeatedly brought unsuccessful suits may entirely be barred from [*in forma pauperis*] status under the three-strikes rule." *Andrews v. Cervantes*, 493 F.3d 1047, 1051-52 (9th Cir. 2007). The "three-strikes rule," contained in §1915(g), states:

> [i]n no event shall a prisoner bring a civil action under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

The evidence shows Plaintiff has a history of abusing the litigation process. The Thurston County Superior Court has permanently enjoined Plaintiff from engaging in public records requests without court approval due to his long history of abusive behavior, which includes making threats to obtain and disseminate prison staff's personal information. *See Troupe v. Tucker*, Case No. C14-5650 BHS-JRC (Dkt. 14-14-3); Dkt. 27-1, pp. 119-34. In a separate Western District of Washington case, Plaintiff was precluded from conducting further discovery and the defendants were relieved from their obligation to respond to Plaintiff's 19th, 20th, and 21st sets of discovery due to the amount of discovery Plaintiff had served on the defendants. *See*

1 *Troupe v. Blakeman*, Case No. C15-5261 RBL-KLS (Dkt. 76; 105) (Plaintiff propounded 265
2 interrogatories, 223 requests for production of documents, and 4 requests for admission, all
3 contained within 21 different sets of discovery requests).

4     In this case, Plaintiff failed to exhaust administrative remedies available for his claims,
5 despite evidence showing he was aware of the grievance process and frequently used the
6 grievance process while housed at WCC, *see* Section I, *supra*, and Plaintiff's claim regarding his
7 IBMP and SEP is conclusory and meritless. *See* Section II, *supra*. Additionally, Plaintiff
8 continually engaged in tactics which appeared to be for the purpose of delaying a decision on
9 Defendants' Motion for Summary Judgment. *See* Dkt. 57, 65, 69, 70, 72, 78, 92. He also failed to
10 follow a Court Order. On December 2, 2016, the Court allowed Plaintiff to serve limited
11 discovery, and stated it would not grant any additional extensions of time to respond to
12 Defendants' Motion for Summary Judgment. Dkt. 83. Contrary to the Order, Plaintiff filed
13 discovery which was beyond the scope of the Order and sought an extension of time to respond
14 to the Motion for Summary Judgment. *See* Dkt. 85, 92.

15     Viewing the evidence as a whole, the Court finds Plaintiff's extensive history of abusive
16 litigation tactics combined with his conduct in this case warrants finding this action is frivolous
17 and malicious. Therefore, the Court recommends this case be counted as a strike under §1915(g).
18 *See e.g. Finley v. Gonzales*, 2009 WL 2581357, *2 (E.D. Cal. Aug. 20, 2009) (finding dismissal
19 for failure to exhaust alone did not count as a strike under § 1915(g); to count as a strike, "the
20 dismissal for failure to exhaust must have been done on the grounds that the action is frivolous,
21 malicious, or fails to state a claim"); *Reed v. CCA/Crossroads Correctional Center*, 2012 WL
22 5830582, *2 (D. Mont. Oct. 25, 2012) (finding failure to exhaust a strike where the plaintiff's
23 failure to exhaust was a deliberate and defiant refusal to grieve his disputes); *Young v. Spizman*,
24

1  2008 WL 678674, *2 (W.D. Wash. March 7, 2008) (courts have found a case is malicious if it is

2  "plainly abusive of the judicial process or merely repeats pending or previously litigated

3  claims").

## CONCLUSION

For the above stated reasons, the Court recommends Defendants' Motion for Summary Judgment be granted and this case be closed. The Court also recommends this action count as a strike for purposes of 28 U.S.C. § 1915(g).

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on March 3, 2017, as noted in the caption.

Dated this 16th day of February, 2017.

David W. Christel
United States Magistrate Judge